JOANOS, Judge.
In this appeal, following a final judgment of foreclosure on the home of the appellees, appellant, McElwain Associates, Inc., challenges the manner in which certain payments made by the Culbreths were applied by the trial court to the debts owed McEl-wain Associates by the Culbreths. We approve of the reasoning employed by the trial court and affirm the final judgment of foreclosure.
The Culbreths became indebted to McEl-wain Associates on three obligations: an equipment note, dated January 21, 1975, with principal in the amount of $9,377.00; an unsecured personal note, dated April 10, 1975, in the amount of $4,400.00; and a note on a non-purchase money mortgage on the Culbreth’s homestead property, dated April 10, 1975, in the amount of $10,000.00. The mortgage note provided that interest payments only, at 6% per annum would be payable monthly beginning May 10, 1975 and continuing for twenty-four months. Beginning May 10, 1977, the payment would be $461.45 per month for twenty-four months, to be credited first to interest at 10% per annum, and then to principal. The unsecured personal note and the mortgage on the homestead property are of significance in this appeal.
McElwain Associates was in the hearing and air conditioning supply business until January, 1980. Mr. Culbreth obtained some of his equipment from McElwain Associates. In order for the Culbreths to pay off their debts, the parties worked out a credit system through which McElwain would retain a percentage of funds due Mr. Culbreth on his business contracts as “override” payments.
From April 16, 1977, to November 18, 1979, Culbreth made $11,113.17 in override payments. In November 1977, Mr. Cul-breth obtained a discharge in bankruptcy and in February 1978, Mrs. Culbreth obtained a discharge in bankruptcy. In November 1978, McElwain filed a complaint to foreclose the mortgage on the homestead property, alleging the Culbreths had defaulted by failing to make the payment due May 10, 1975 and all subsequent payments. The Culbreths answered asserting as an affirmative defense that after the note was executed McElwain made adjustments in the terms with respect to the payment of principal and interest, specifically, that McElwain had been receiving a 10% override on heating and air conditioning equipment ordered by Culbreth from McElwain. It was alleged further that Culbreth continued to pay the overrides and would continue to do so in the future according to the agreement between McElwain and the Cul-breths.
At trial Mr. McElwain testified that on July 26, 1979, he returned the unsecured personal note to Mr. Culbreth indicating it was paid in full. McElwain had not furnished written accountings to the Culbreths indicating how the override payments were being applied to the various debts. He said Mr. Culbreth had not indicated to which debt he wished to apply the payments and that, although the unsecured personal note had been discharged in bankruptcy, Mr. Culbreth had said he wanted to pay the debt anyway. Apparently on that basis McElwain continued to apply the override payments to the unsecured personal note after the discharge in bankruptcy, until it was paid off in July, 1979.
Mr. Culbreth testified that before July 26, 1979, he had no knowledge of how the override payments were being applied. He *840 acknowledged having indicated that he would pay the discharged unsecured note, but said he had not agreed on a time for payment of that debt.
In the final judgment of foreclosure, the trial court found that the Culbreths made no payments on the note and underlying mortgage from April 10,1975, until April 6, 1977, but that Mr. Culbreth and McElwain Associates had agreed on the system of override payments on merchandise sold by McElwain Associates to Mr. Culbreth. These payments totalled $11,113.17. The court noted that the unsecured obligation had been discharged by the individual bankruptcies of Mr. and Mrs. Culbreth.
The court found that neither Culbreth nor McElwain Associates designated how the override payments would be applied until after McElwain instituted the foreclosure action and the Culbreths asserted the affirmative defense of appropriation of payment to the homestead mortgage. The court ruled the Culbreths were entitled to have all payments made from April 6, 1977, through November, 1979, applied to a reduction of the mortgage on the homestead property, citing as authority Frieslander v. Mahon, 400 So.2d 41 (Fla. 2d DCA 1981). Finding a remaining principal of $680.10 and interest of $188.50 due, the court ruled that McElwain had a lien in that amount and if it were not paid within a certain time the property would be sold at public sale.
Appellant first argues that the court erred in determining that neither party had designated how the payments were to be applied before the foreclosure action was instituted and the affirmative defense asserted. Appellant relies on the general rule, reiterated in Frieslander, that a creditor may apply payments as it sees fit when the debtor fails to direct the order of application, arguing that the trial court confused the creditor’s actual application of payment with notice to the debtor of the application. In the present context, this distinction is without significance. There is competent substantial evidence in the record to support the ruling that neither party indicated how the payments would be applied until after the foreclosure action was instituted. A creditor must promptly apply payments or lose the right to do so as he desires. Frieslander citing Randall v. Pettes, 12 Fla. 517 (1868).
Appellant’s second argument is that the trial court should not have based its ruling on Frieslander because there is no authority for that decision in Florida case law. Alternatively, appellant argues that the instant case is distinguishable from Frieslander, in that the homestead rights of the spouse in this case did not need protection, since she was a participant in mortgaging the homestead property.
In Frieslander the court noted that “[a]n exception to the general rule of first applying undirected payments to unsecured debts is recognized by several states to favor allocation of undirected payments toward a mortgage secured by a lien on homestead property over an unsecured debt.” 400 So.2d at 43.
The fact, alluded to by appellants, that in Frieslander the former wife, who had been given exclusive use and possession of the homestead property, had not been a party to the mortgage on the homestead property, while Mrs. Culbreth did join in mortgaging the property in this case, does not render the rule recited in Frieslander inapplicable to the instant case. The rule of Frieslander and the cases cited therein is based on a policy of protecting homestead rights. This is a valid consideration even though both husband and wife have joined in encumbering the homestead property. In order to encumber the homestead property by mortgage, the husband had to be joined by the wife. Art. X, § 4(c), Fla. Const. This case does not involve the initial ability to encumber the property; rather, the application of payments to satisfy that encumbrance is at issue. Appellant has cited no authority and made no argument that convinces us that the trial court erred in applying the override payments first to the homestead mortgage. Appellant cited as authority Hicks v. Mid-Florida Production Credit Assoc., 374 So.2d 566 (Fla. 1st DCA 1979), however, in that case the court held *841 simply that foreclosure of a non-purchase money mortgage on homestead property is not a forced sale under Art. X, § 4(a), Fla. Const., and is thus permissible. In the instant case foreclosure' was not precluded; rather, the court applied the payments to the mortgage on the homestead first and determined the amount remaining which, if not paid, would be covered by the public sale.
The final judgment of foreclosure is AFFIRMED.
LARRY G. SMITH and THOMPSON, JJ., concur.