519 So.2d 652 (1988)
George E. ROLLINS, Margaret Rollins, Elizabeth Rollins, Kenneth Lenard Rollins, et al., Rayfield Rollins, et al., Annaleese T. Mobley, Nathaniel Oliff and George L. Rollins, As Trustees of the New Hope Church of God Deliverance, Inc., Appellants,
v.
J.D. ODOM, Jr., and Vernie Odom, His Wife, Appellees.
Nos. BR-442 to BR-444.
District Court of Appeal of Florida, First District.
January 12, 1988.
Rehearing Denied February 25, 1988.
*653 Bryce W. Ackerman of Savage, Krim, Simons, Fuller & Ackerman, P.A., Ocala, for appellants.
James S. Quincey, Sandra G. Smith, Robert McGinnis of Clayton, Johnston, Quincey, Ireland, Felder, Gadd, Smith & Roundtree, Gainesville, for appellees.
JOANOS, Judge.
This is a consolidated appeal from final judgments of foreclosure. The three points presented for our review are: (1) whether the statutory usury penalty was correctly applied, (2) whether acceleration of the mortgage interest rate resulted in criminal usury, and (3) whether consideration should have been given to evidence of additional interest in the initial transaction. We reverse.
Briefly stated, the voluminous record in this case reflects that the three mortgages which are the subject of this appeal all pertain to a single loan. The original mortgage was executed on July 9, 1980, by George, Margaret, and Elizabeth Rollins, to *654 secure a loan in the amount of $66,850.00, from J.D. and Vernie Odom. The mortgaged property consisted of a forty-acre tract of land, with a house and two other structures situated thereon. The property was owned by George Rollins, and his wife Margaret, and George's mother, Elizabeth. The loan was for a one-year period, with a stated interest rate of fourteen percent. On the same day that George, Margaret, and Elizabeth mortgaged the forty acres to the Odoms, the following documents were executed in connection with the same tract of land: (1) warranty deeds conveying 10 acres to Rayfield Rollins, 10 acres to Kevin Rollins, and 7.5 acres to New Hope Church of God Deliverance, Inc. (the Church); (2) mortgages and promissory notes executed in the amounts of $18,500.00 by Rayfield Rollins, $18,500.00 by Kevin Rollins, and $14,500.00 by the Church; and (3) assignments of these three mortgages to the Odoms. Rayfield and Kevin Rollins are sons of George and Margaret Rollins. In August 1980, George, Margaret, and Elizabeth Rollins conveyed approximately two acres to their youngest son Kenneth, for a stated sale price of $3,502.80. All documents pertaining to the forty-acre Rollins tract were prepared by the Odoms' attorney.
On July 9, 1981, payment was due on the mortgages. The George Rollins family had been unable to obtain alternative financing, and were in default on the first mortgage. In a letter dated December 30, 1981, the Odoms' attorney advised that the total amount due included: (1) interest at the rate of 14 percent from July 9, 1980, to July 9, 1981  $9,359.00; (2) interest at the rate of 18 percent from July 9, 1981, to January 15, 1982  $6,264.30; and (3) attorney's fees  $886.16, for a total amount of $83,359.46.
On January 18, 1982, the parties entered into mortgage and note modification agreements. These agreements restructured the loan, spreading repayment over a ten-year period, at a stated interest rate of 14 percent. Also in January 1982, the Odoms required Kenneth Rollins to execute a mortgage and promissory note in the amount of $12,762.86, with payment to be made directly to the Odoms. Although the modification agreements purportedly discounted the original mortgage liability to $49,301.50, George and Margaret Rollins were required to guarantee the promissory notes of their children and the church. This resulted in a total principal debt of $113,564.36.
Before Mr. Odom decided to take a mortgage on the Rollins tract, he inspected the land and its improvements. Based on his experience in land transactions, he determined the property was worth $80,000.00. According to his testimony, Mr. Odom considered the land and the improvements thereon constituted sufficient security for the loan. At the time of the initial transaction, Mr. Odom charged a 10 percent brokerage commission and a 14 percent interest rate. The modification agreement came into being when Mr. Odom advised Mr. Rollins that the alternative was foreclosure.
The record reflects that, in addition to other enterprises, the Odoms buy and sell land, and lend money on land. Mrs. Odom is a licensed real estate broker, and handles the business records and books for herself and her husband. For the most part, Mr. Odom collected the payments due in connection with the George Rollins transaction and then advised Mrs. Odom regarding the amount of payment received  at which point Mrs. Odom would post the payments on a ledger sheet. The system appears to have been casual at best, with the accuracy of the accounting records dependent upon whether Mr. Odom remembered to advise Mrs. Odom of payments he had received. We note the Odoms' testimony is at times conflicting with respect to payments received, and these contradictions resulted in possible inaccuracies in the final judgments. The record also reflects that Mrs. Odom received a mortgage brokerage commission of $6,635.00 in connection with the George Rollins transaction.
None of the $66,850.00 loaned in connection with the mortgage transaction was paid directly to George Rollins or any member of his family. Instead, the closing *655 statement prepared in connection with the transaction indicates the funds were allocated in the following manner:

 First Federal Savings & Loans Association of
 Bronson (Satisf. of foreclosure) $49,068.23
 Walkup Lumber Co. (Satisf. of Lien) 424.26
 Abel Supply, Inc. (Satisf. of Judgment) 178.92
 M.K. Flowers & Assoc. (Satisf. of Lien) 1,333.90
 S.E. First National Bank of Miami 
 (Judgment) 56.48
 Robert W. Morrions (Satisf. of Judgment) 1,250.00
 W.R. Grace & Co. (Satisf. of Judgment) 169.08
 Sportsman's World (payoff debt) 4,500.00
 Closing Costs re loan and sale
 transactions (see prior page for
 itemization) 9,869.13
 ________
 $66,850.00
 __________

Included within the closing cost total of $9,869.13, was the $6,635.00 mortgage brokerage commission paid to Mrs. Odom. Mr. Rollins's testimony indicates the $4,500.00 payment to Sportsman's World was repayment of $2,000.00 which Mr. Odom loaned to Mr. Rollins some six months prior to the mortgage transaction. Sportsman's World was a business owned by Mr. Odom.
The testimony of Kevin and Rayfield Rollins establishes that they executed mortgages and promissory notes at the request of their father. According to Kevin Rollins, he entered into the transaction because his father wanted to keep the land in the family. The Kevin Rollins mortgage was not included in the foreclosure proceedings which are the subject of this appeal.
Final judgments of foreclosure were entered in November 1986. After proceedings were held on appellants' motions for rehearing, the trial court entered amended final judgments of foreclosure. In Case No. 84-209 (the George, Margaret, Elizabeth and Kenneth Rollins mortgages), the trial court found the interest rate on the 1980 mortgage resulted in civil usury. This finding was predicated upon the trial court's determination that the $6,635.00 mortgage brokerage fee constituted interest which, when calculated pursuant to section 687.03(3), Florida Statutes, amounted to an effective interest rate of 23.9 percent, or civil usury. The penalty assessed against the George, Margaret, and Elizabeth mortgage was double the interest actually collected, pursuant to section 687.04, Florida Statutes. The trial court further found the Odoms had included in the Kenneth mortgage $3,626.70 in interest due on the George, Margaret, and Elizabeth mortgage. Therefore, $3,626.70 was deducted from the $12,762.86 Kenneth Rollins mortgage. With respect to the Rayfield Rollins and Church mortgages, the trial court found that the penalty for civil usury had been assessed in Case No. 84-209. Therefore, no further penalties were assessed in these two cases.
The final judgment of foreclosure in the George, Margaret, Elizabeth, and Kenneth Rollins mortgages reflects an amount due of $47,019.56, after calculation of penalties, taxes, insurance, attorney's fees, and costs. In the Rayfield Rollins and Church final judgments of foreclosure, the trial court found total amounts due of $21,240.22, and $16,755.12, respectively.
Section 687.02, Florida Statutes defines as usurious 
All contracts for the payment of interest upon any loan, advance of money, line of credit or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest ...
Civil usury exists, by implication, when a loan in the amount of $500,000 or less has an interest rate greater than 18 percent per year and less than or equal to 25 percent per year. See §§ 687.03, Fla. Stat. and 687.071, Fla. Stat. (1981). Section 687.03 provides, in part:
Except as provided herein, it shall be usury and unlawful for any person, or for any agent, officer, or other representative of any person, to reserve, charge, or take for any loan, advance of money, line of credit, forbearance to enforce the collection of any sum of money, or other obligation a rate of interest greater than the equivalent of 18 percent per annum simple interest, either directly or indirectly, by way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever *656 whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest. (emphasis supplied).
Criminal usury is any loan with a rate of interest greater than 25 percent but not in excess of 45 percent per year. Section 687.071(2) states in part:
Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, shall be guilty of a misdemeanor of the second degree, ...
The penalties for civil usury are forfeiture of all interest charged or contracted to be charged, so that only the actual principal sum of the contract can be enforced. In addition, if interest has been paid, double the amount of the interest received will be forfeited. § 687.04, Fla. Stat. (1981).[1]
A lender guilty of criminal usury, that is, a loan obligation that bears an interest rate in excess of 25 percent per year but not in excess of 45 percent per year, forfeits the right to collect the debt. § 687.071(7), Fla. Stat. (1981).[2]
The statutory formula for computation of the "effective rate of interest" is set forth in section 687.03(3), Florida Statutes, which provides, in part:
(3) For the purpose of this chapter, the rate of interest on any loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or other obligation to pay interest shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms, whether or not said loan, advance of money, line of credit, forbearance to enforce collection of a debt, or other obligation is paid or collected by court action prior to its term, and any payment or property charged, reserved, or taken as an advance or forbearance, which is in the nature of, and taken into account in the calculation of, interest shall be valued as of the date received and shall be spread over the stated term of the loan, ... for the purpose of determining the rate of interest. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of such loan, advance of money, line of credit, forbearance to enforce collection of a debt, or obligation. This percentage shall then be divided by the number of years, and fractions thereof, of the loan, ... according to its stated maturity date, without regard to early maturity in the event of default. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter.... (emphasis supplied).
See also Wilson v. Conner, 106 Fla. 6, 142 So. 606, 607 (1932)  the actual principal sum received is the "actual amount of money which the lender turns over to the borrower when the note is signed and the loan completed." Accord Mindlin v. Davis, 74 So.2d 789 (Fla. 1954); Rebman v. Flagship *657 First National Bank of Highlands County, 472 So.2d 1360, 1362 (Fla. 2d DCA 1985).
In St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982), the supreme court said section 687.03(3) is clear on its face and should be applied in the following manner:
1. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan....
2. This percentage rate shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default....
3. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter....
See also Practice Under Florida Usury Law § 4.41 (Fla.Bar Continuing Legal Educ.Practice Manual, 1982).
Since the purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender, Stubblefield v. Dunlap, 148 Fla. 401, 4 So.2d 519 (1941); Pushee v. Johnson, 123 Fla. 305, 166 So. 847 (1936); River Hills, Inc. v. Edwards, 190 So.2d 415 (Fla. 2d DCA 1966), for purposes of usury calculations, courts will look beyond the form of a transaction to its substance. Mindlin v. Davis, 74 So.2d 789 (Fla. 1954); Rebman v. Flagship First National Bank of Highlands County, 472 So.2d 1360, 1363 (Fla. 2d DCA 1985); May v. United States Leasing Corp., 239 So.2d 73, 75 (Fla. 4th DCA 1970); Kay v. Amendola, 129 So.2d 170 (Fla. 2d DCA 1961); Gilbert v. Doris R. Corp., 111 So.2d 682, 684 (Fla. 3d DCA 1959).
The four elements of a usurious transaction are: (1) an express or implied loan; (2) an understanding between the parties that the money loaned shall be returned; (3) an agreement that a greater rate of interest than is allowed by law shall be paid or agreed to be paid; and (4) the existence of a corrupt intent to take more than the legal rate for the use of the money loaned. Dixon v. Sharp, 276 So.2d at 819; Gergora v. Goldstein Professional Association Defined Benefits Pension Plan and Trust, 500 So.2d 695, 697 (Fla. 3d DCA 1987); Rebman v. Flagship Bank, 472 So.2d at 1362; River Hills, Inc. v. Edwards, 190 So.2d 415, 423 (Fla. 2d DCA 1966).
When usury is raised as a defense, the borrower must affirmatively plead and establish the four elements of a usurious transaction by clear and satisfactory evidence. Dixon v. Sharp, 276 So.2d at 820; Sumner v. Investment Mortgage Company of Florida, 332 So.2d 103, 105 (Fla. 1st DCA 1976) cert. denied 344 So.2d 327 (Fla. 1977); Gergora v. Goldstein Professional Assoc., 500 So.2d at 697; Rebman v. St. Petersburg Bank, 472 So.2d at 1362. In other words, "[t]hat the lender willfully and with corrupt intent charged or accepted more than the prohibited interest must be specifically and affirmatively pleaded and established by clear and satisfactory evidence." River Hills, Inc. v. Edwards, 190 So.2d at 424. See also American National Growers Corporation v. Harris, 120 So.2d 212, 213 (Fla. 2d DCA 1960).
The lender's corrupt and willful intent to charge a usurious interest rate is determined by a consideration of all the circumstances surrounding the transaction. Dixon v. Sharp; Sumner v. Investment Mortgage Co.; River Hills, Inc. v. Edwards. In River Hills the court said 
The requisite corrupt or purposeful intent, ... is satisfactorily proved if the evidence establishes that the charging or receiving of excessive interest was done with the knowledge of the lender. (emphasis supplied by the court).
190 So.2d at 424.
The lender's testimony that he did not have an intent to charge and to receive interest in excess of the legal rate is not determinative of the question. Shorr v. Skafte, 90 So.2d 604, 606-607 (Fla. 1956). *658 Rather, it is the fact that the lender consciously intends and does in fact make charges which result in usury that establishes the requisite element of corrupt intent. Dixon v. Sharp; Shorr v. Skafte. See also Curtiss National Bank of Miami Springs v. Solomon, 243 So.2d 475, 477 (Fla. 3d DCA 1971)  "[w]hen the lender has intentionally and purposely done that which amounts to or results in a contract for or the exaction of usurious interest, an argument by the lender that it was not shown the lender intended to violate the usury statute is without merit."
The usurious character of a transaction is established at its inception, and the taint of usury follows through and becomes a part of any new or substituted contract. Shorr v. Skafte; Coral Gables First National Bank v. Constructors of Florida, 119 So.2d 741, 746-747 (Fla. 3d DCA), cert. denied, 123 So.2d 349 (Fla. 1960). Only if every element of usury charged to exist in the first loan contract is abandoned in a new agreement and the borrower voluntarily agrees to carry out the new agreement, will the new contract be enforceable. Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1, 3 (Fla. 1971); Shorr v. Skafte.
The trial court found the loan transactions were civilly usurious, and the Odoms have not disputed that finding. We have determined that application of the foregoing statutes and legal principles to the mortgage foreclosures at issue in this consolidated appeal, demonstrates that notwithstanding the facial complexity of the transactions, this matter actually pertains to only one loan in the amount of $60,215.00, which loan is secured by a forty-acre tract of land. Our careful examination of the record leads us to conclude that acceleration of the interest rate in the original transaction resulted in criminal usury. Since the usurious interest rate was not abandoned when the debt was restructured, the taint of criminal usury flowed through and became a part of the modification agreements.
Accordingly, the amended final judgments of foreclosure are reversed and these consolidated appeals are remanded with directions to enter an order of forfeiture of all principal and interest due under the combined transactions.
SMITH, C.J., and WENTWORTH, J., concur.
NOTES
[1] § 687.04, Fla. Stat. (1981), provides in pertinent part:

687.04 Penalty for usury; not to apply in certain situations. 
Any person, or any agent, officer, or other representative of any person, willfully violating the provisions of s. 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is taken or reserved, or has been paid, then and in that event the person who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest shall forfeit to the party from whom such usurious interest has been reserved, taken, or exacted in any way double the amount of interest so reserved, taken, or exacted. .. .
[2] § 687.071(7), Fla. Stat. (1981), provides:

No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state.