537 So.2d 1027 (1988)
Vincent ANTONELLI and Mary Ann Antonelli, Appellants,
v.
Ken NEUMANN, Appellee.
No. 88-1085.
District Court of Appeal of Florida, Third District.
December 27, 1988.
*1028 Harold A. Turtletaub, for appellants.
Frigola, DeVane & Wright and James J. Dorl, Marathon, Fla., for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
BASKIN, Judge.
Vincent and Mary Ann Antonelli appeal a final judgment entered in an action Ken Neumann brought to recover sums evidenced by two promissory notes executed in conjunction with a $100,000 loan from Neumann to the Antonellis. Following a non-jury trial, the trial court found that appellants failed to establish their usury defense by clear and convincing evidence and entered judgment in favor of Neumann. This appeal ensued. We reverse.
The Florida Supreme Court, in Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), stated:
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.
Tibbs, 397 So.2d at 1123; see, e.g., Cuna Mut. Ins. Soc'y v. Adamides, 334 So.2d 75 (Fla. 3d DCA 1976); Biscayne Mfg. Corp. v. Sandav Corp., 323 So.2d 315 (Fla. 3d DCA 1975). We apply that principle to the case before us.
The four prerequisites for proving a usurious transaction are: 1) an express or implied loan; 2) an understanding between the parties that the money must be repaid; 3) an agreement to pay a rate of interest in excess of the legal rate; and 4) a corrupt intent to take more than the legal rate for the use of the money loaned. Dixon v. Sharp, 276 So.2d 817 (Fla. 1973); Rollins v. Odom, 519 So.2d 652 (Fla. 1st DCA), review denied, 529 So.2d 695 (Fla. 1988); Rebman v. Flagship First Nat'l Bank, 472 So.2d 1360 (Fla. 2d DCA 1985); Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. 3d DCA 1977). On March 3, 1981, the parties executed two agreements: 1) an agreement in which Neumann consented to deposit $100,000 in the trust account of the Antonellis' attorney, to be held in trust until the parties executed two promissory notes for loans totaling $100,000, and 2) an agreement whereby Neumann would perform landscape consulting work on the Antonellis' condominium project. Neumann loaned appellants $100,000; the Antonellis executed two $50,000 notes at the statutory legal interest limit of 18% per annum. § 687.03, Fla. Stat. (Supp. 1980). The Antonellis remitted timely interest payments in addition to payments equal to 2% of the *1029 loan amount. The Antonellis marked each 2% check "landscape consultant fee." Subsequently, the Antonellis ceased making payments. At issue is whether the parties agreed that Neumann would receive a higher rate of interest than the 18% stated on the notes. Where, as here, the notes appeared to require the legal rate of interest, the borrower has the burden of proving that the parties employed a corrupt device to conceal a usurious transaction and that it was in the full contemplation of the parties. See Davanzo v. Miami Nat'l Bank, 301 So.2d 797 (Fla. 3d DCA 1974), cert. denied, 315 So.2d 185 (Fla. 1975). "The requisite corrupt or purposeful intent ... is satisfactorily proved if the evidence establishes that the charging or receiving of excessive interest was done with the knowledge of the lender," Dixon, 276 So.2d at 821, and "is determined by a consideration of all the circumstances surrounding the transaction." Rollins, 519 So.2d at 657.
In determining whether an agreement is usurious, the court may disregard the form of the agreement and consider the substance of the transaction. Growth Leasing, Ltd. v. Gulfview Advertiser, Inc., 448 So.2d 1224 (Fla. 2d DCA 1984); May v. U.S. Leasing Corp., 239 So.2d 73 (Fla. 4th DCA 1970); Kay v. Amendola, 129 So.2d 170 (Fla. 2d DCA 1961). Thus, notations on the checks describing the payments as consulting work are not dispositive of the issue. Cf. American Acceptance Corp. v. Schoenthaler, 391 F.2d 64 (5th Cir.) (although discount charged is not set forth in note, note was device to avoid usury and did not constitute actual transaction), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). "Where ... an illogical and spurious transaction is entered into for the purpose of making that which is usurious appear otherwise, the lenders will not be excused from the penalties of the usury statute by pleading ignorance of the law or that they did not intend usury." Lee Constr. Corp. v. Newman, 143 So.2d 222, 225 (Fla. 3d DCA), cert. denied, 148 So.2d 280 (Fla. 1962).
In the case before us, the record contains a letter dated October 4, 1981, from Neumann to the Antonellis. In that letter Neumann states:
Please acknowledge the two photostatic documents herein as verification of the two promissory notes as well as the date of departure from Joliet. The dates appearing on the promissory notes will iniciate [sic] the point from which the interest will be accrued. Have you found a way around paying the 20% as agreed, or will you have to pay the 18% and the additional 2% under a different pretext? If my my [sic] calculations are accurate at a 20% rate, the monthely [sic] interest due is $833.00, and the monthly interest due for 18% is $750.00. Multiplied by 5 month intervals, the interest due would be $4165.00 and $3750.00 respectively. Of course the 20% rate sounds better, but if complications are a sure result, we can work out further details later. Please note that the note dated on April 20 is now due on September 20, 1981, and the note dated on May 19, 1981 will be due on October 19, 1981. Consequently, please remit the one check as quickly as possible and the other on the 19 of October. My financial obligations on this end to the bank definately [sic] require punctuality. Thank you for your cooperation on this matter, and don't foreget [sic] to send me a set of prints of the project.
The letter reflects Neumann's intention to require more than the legal rate of interest. The description of the Antonellis' payments of an additional 2% as landscape consulting fees for their condominium project was merely a contrivance to conceal a usurious transaction.[1] The trial court *1030 inferred that the 2% payments were credits against the landscape agreement, but a review of the evidence fails to support that conclusion. Thus, we hold that the trial court's decision was clearly erroneous.
Additional indicia of usury appear in the record. First, the landscape consulting agreement, executed contemporaneously with the loan agreement, provided that Neumann would be paid $1,000 per unit and 5% of amounts exceeding $150,000 "upon the closing of the sale of each individual apartment." The 2% payments, purportedly for consulting fees, however, were made simultaneously with each interest payment. Thus, the payments were made in advance of the condominium sales, contrary to the agreement. Second, Neumann admitted that he received payment prior to commencing consulting duties. Cf. Williamson v. Clark, 120 So.2d 637 (Fla. 2d DCA 1960) (where lender conducted cursory inspections, purported inspection fee mere cloak for exacting illegal interest). Third, although Neumann testified that the 2% payments were for landscape consulting work, he did not testify that these payments were to be credited against the total consulting fee. Neumann's testimony failed to verify that these payments were made pursuant to the written landscape consulting agreement, but Antonelli testified that the 2% payments were definitely not made under the landscaping agreement. Finally, the 2% payments conveniently constitute the difference between the 18% legal rate and the 20% referred to in the October 4th letter, presenting further proof that intent behind the the 2% payments was to circumvent the usury law. See In re Marill Alarms Sys., Inc., 81 B.R. 119 (Bankr.S.D.Fla. 1987) (court found that commissions paid to corporation were usurious interest payments where, among other circumstances, corporation created on same date as loan arranged, payments to corporation made on same date as payments to creditor, and amounts paid as purported commission curiously tied-in to the amount of actual loan payments), aff'd, 861 F.2d 725 (11th Cir.1988). For these reasons, we hold that no competent substantial evidence supports the judgment.
REVERSED AND REMANDED.
SCHWARTZ, C.J., concurs.
JORGENSON, Judge, dissenting.
I respectfully dissent.
There is substantial competent evidence, albeit disputed, to support the decision of the trial court following the non-jury trial. Marsh v. Marsh, 419 So.2d 629 (Fla. 1982). The majority, having first admonished itself "not to retry a case or reweigh conflicting evidence," has proceeded to do both. It is not the role of an appellate court to reevaluate evidence and substitute its judgment for that of the fact finder. Helman v. Seaboard Coast Line R.R., 349 So.2d 1187 (Fla. 1977).
I would affirm.
NOTES
[1] Relying on Atwood v. Fisher, 330 So.2d 62 (Fla. 3d DCA), cert. denied, 341 So.2d 1079 (Fla. 1976), Neumann argues that the letter is irrelevant to show intent at the time of the execution of the documents. In Atwood, this court stated that "[t]here must exist an intent on the part of the lender at the time of the loan agreement is executed to get more than the legal interest and if the agreement is usurious at that time no subsequent transaction will purge it." Atwood, 330 So.2d at 63. Although the letter is dated several months after the execution of the loan documents, it serves to impeach Neumann's testimony that the 2% payments were for landscaping fees and that prior to execution of the documents Neumann abandoned the parties' tentative agreement to pay 20% interest.