In re OMNI CAPITAL GROUP, LTD., d/b/a Omni Capital Group, Inc., of New Jersey, Debtor.

Jack STEIN, as Trustee of the Estate of Omni Capital Group, Ltd., Plaintiff,

v.

Gerard LAVAY, Defendant.

Bankruptcy No. 92–31633–BKC–RAM. Adv. No. 92–1000–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

May 6, 1993.

Lawrence A. Kellogg, Tew, Garcia & Pedrosa, Miami, FL, for plaintiff.

Herbert Stettin, Miami, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ERWIN I. KATZ, Bankruptcy Judge.

This adversary proceeding was tried before the Court on March 15 and 16, 1993, consolidated with adversary case numbers 92–1071 through 92–1075–BKC–RAM–A for the purpose of resolving common issues relating to Plaintiff's avoidance claims under 11 U.S.C. §§ 547 and 548. On March 19, 1993 this court entered Consolidated Findings of Fact and Conclusions of Law in Adv. No. 92–1071–BKC–RAM–A through 92–1075–BKC–RAM–A. The court hereby adopts the Findings of Facts and Conclusions of Law in those cases as Findings of Fact and Conclusions of Law in this case. In addition, the court separately tried the issues in the instant adversary proceeding relating to Plaintiff's claims for turnover of property of the estate pursuant to 11 U.S.C. § 542 and, as to those claims, makes the following additional findings of fact and conclusions of law: Plaintiff has the burden of proving all of the elements of his Complaint by clear and convincing evidence.

In addition to obtaining funds from equity, limited partner investors, Omni and Thomas Mullens ("Mullens") also borrowed funds under a "note program", pursuant to which individuals would lend funds in return for guaranteed payments of interest. Regardless of the named obligor on the notes, repayment of principal and interest to note-holders was made by Omni out of its general operating accounts. Mullens testified that, although the interest rate on the face of the notes he issued was usually six percent, the interest rate set forth in the notes represented only a minimum guarantee. Mullens further testified that he told note-holders to expect a return of nine percent (9%) *per quarter* on the monies they advanced, or, in other words, to expect $9,000 in interest every 90 days for every $100,000 loaned.

Prior to Omni's bankruptcy, Defendant made four separate loans to Omni through Mullens. Each of those loans is evidenced by a promissory note. The principal amounts and dates of these notes are as follows:

| Note | Date | Amount |
| --- | --- | --- |
| 1 | 01/09/89 | $100,000 |
| 2 | 01/30/89 | $100,000 |
| 3 | 11/26/90 | $ 50,000 |
| 4 | 11/15/91 | $140,000 |

Payments of principal and interest made to Defendants on each of the above-described notes (collectively the "Notes") came directly from Omni's bank accounts. Omni's bank account records reflect that Omni made payments by check to Defendant totalling $446,000 from 1989 through the date on which the bankruptcy petition was filed. These check payments, along with the funds loaned to Omni by Defendant, were all reflected in a summary schedule prepared from Omni's bank records and introduced into evidence as Plaintiff's Exhibit No. 79. Omni issued an additional check to Defendant, not reflected in Exhibit No. 79, for $108,900 on or about April 24, 1992, payment on which was stopped only because Omni's assets had been placed into receivership. In addition to these payments by check, the evidence, including Mullens' testimony and Omni's records, clearly established that Defendant received an additional $9,000 in cash payments from Omni in April, 1990. Defendant has not presented any evidence which would dispute the timing or amount of any of the payments described above, nor that they were made by Omni to satisfy obligations under the Notes.

Based on the payments and attempted payments described above, Plaintiff's ex-

pert witness, Laurie Holtz ("Holtz"), testified that Defendant was paid the following rates of interest on the Notes for each of the years for which those Notes were outstanding:

|      | Note 1   | Note 2  | Note 3 | Note 4 |
| ---- | -------- | ------- | ------ | ------ |
| 1989 | 18.77%   | 19.91%  | —      | —      |
| 1990 | 29.25%   | 29.25%  | 60.00% | —      |
| 1991 | 23.9%    | 62.3%   | —      | 73.94% |
| 1992 | + 70%    | —       | —      | —      |

In making his mathematical calculations to determine the interest rates on each of the Notes, Holtz made certain basic assumptions regarding the characterization of the payments from Omni as either principal or interest, including:

- That all of the payments to Defendant up to and including the payment dated November 1, 1990, were payments of interest on Note 1 and Note 2, the only two Notes outstanding at the time these payments were made. Holtz split these interest payments equally between Note 1 and Note 2.

- That the check from Omni to Defendant for $52,500 dated December 27, 1990 was a repayment of principal plus $2,500 interest of the $50,000 note which was dated November 26, 1990 and had a maturity date of December 26, 1990 (Note 3).

- That the check from Omni to Defendant for $109,000 dated February 11, 1991 was a repayment of principal plus $4,500 interest on the $100,000 note dated January 30, 1989 (Note 2). (The other $4,500 was attributed to interest on Note 1).

- That the check from Omni to Defendant for $163,000 dated February 10, 1992, was a repayment of principal plus $23,000 interest on the note dated November 15, 1991, which had a maturity date of January 30, 1992.

- That the principal balance of the original $100,000 note dated January 9, 1989 (Note 1) was never actually repaid and that, with the exception of the check for $4,400 dated January 8, 1991, which was characterized as an interest payment and divided equally between Note 1 and Note 2, all remaining check payments by Omni to Defendant, including the $108,900 check dated April 24, 1992 which was deposited by Defendant but not paid, constituted payments on Note 1.

The Court finds that Holtz's basic assumptions, and thus his interest rate calculations, were clearly supported by the documentary and testimonial evidence presented by Plaintiff and by every inference that could reasonably be drawn therefrom. That evidence included the following:

- Note 1 and Note 2 were repeatedly rolled over approximately every 90 days with renewal notes for the *entire* $100,000 original principal balance of each note, indicating that the payments being made to Defendant by Omni were being credited exclusively to interest and *not* to reduce principal.

- Omni's own internal documents regarding the Notes payable to Defendant also clearly reflect the repeated rollover of the entire principal balance of Note 1 and Note 2 and, more importantly, reflect as "Interest Paid" payments corresponding directly to the check payments which were set forth in Plaintiff's Exhibit 79 and which were characterized as interest by Holtz. These documents also reflect that the $52,500 payment to Defendant on December 27, 1990 represented a repayment of the $50,000 principal balance plus $2,500 in interest on Note 3, which matured on December 26, 1990.

- The 1099 forms from Omni to Defendant for 1990 (when added together) and for 1991 show that Defendant received *income* from Omni which exactly equals the amount which Holtz characterized as interest payments on the Notes for each of those two years.

- In addition to acknowledging that he made cash payments to Defendant in 1990, Mullens testified that the six percent rate set forth in the Notes was an arbitrary figure and that he told noteholders, including Defendant, that they could expect to receive approximately nine percent (9%) *per quarter* on their loans. This would result in an annual

interest rate of 36%. In addition, Plaintiff admitted into evidence several letters from Mullens to Defendant which advised Defendant to expect a return in excess of the guaranteed minimum of six percent and which referred to quarterly "dividends" or "distributions" paid to Defendant of approximately $9,000 or, as Mullens testified, 9% per quarter.

- In Defendant's deposition testimony, read into the record by Plaintiff without objection pursuant to Federal Rule of Civil Procedure 32(a)(2), Defendant acknowledged his discussions with Mullens that he would receive a rate of return in excess of the six percent minimum guarantee set forth in the Notes. Defendant also testified that the check payments of $52,500.00 on December 27, 1990, $109,000.00 on February 11, 1991 and $163,000.00 on February 10, 1992 were, just as Holtz had assumed, repayments of the outstanding principal balances on Note 3, Note 2 and Note 4 respectively. In addition, Defendant testified that, with respect to the $50,000.00 loan (Note 3) made on November 27, 1990, Mullens told Defendant that he would get five percent on his money in a relatively short time. Under Holtz's assumptions, Defendant in fact received $2,500.00 in interest, or exactly five percent, on Note 3 in one month's time, which extrapolates to an annual interest rate of 60%.

In short, Defendant received what could only be characterized as "interest" on each of the Notes at rates in excess of 25% per annum.

In addition to the payments made to Defendant by Omni pursuant to the Notes, Omni's records revealed that Omni made the following payments for Defendant's benefit which were unrelated to the Notes:

| Date | Amount |
| --- | --- |
| December 9, 1991 | $25,000 |
| December 11, 1991 | $12,000 |
| January 13, 1992 | $19,000 |

These payments were made by Omni at Defendant's direction to the Lavay Corporation, but were reflected in Omni's records as accounts receivable due from Defendant to Omni. The Lavay Corporation is wholly owned by Defendant and his son. Defendant offered no evidence at trial to refute either the amount or nature of these payments.

Based on the foregoing facts, Plaintiff has asserted two claims against Defendant for turnover of property of the estate pursuant to 11 U.S.C. § 542(b). In Count I, Plaintiff seeks to recover principal and interest paid under the Notes on the grounds that Defendant charged and received usurious interest on the Notes in violation of Chapter 687 of the Florida Statutes. In Count II, Plaintiff seeks recovery of the additional $56,000 in accounts receivable owed by Defendant to Omni.

## I. *Turnover: Usury.*

Under *Fla.Stat.* § 687.03, it is "usury" and therefore unlawful for any person "to reserve, charge, or take for any loan ... a rate of interest greater than the equivalent of 18% per annum simple interest, either directly or indirectly, by way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18% per annum simple interest." *Fla.Stat.* § 687.04 expressly provides that when usurious interest "has been paid, then and in that event the person who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest shall forfeit to the party from whom such usurious interest has been reserved, taken, or exacted in any way double the amount of interest so reserved, taken, or exacted."

*Fla.Stat.* § 687.071 defines criminal usury as the making of a loan where the person making the loan "shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 25% per annum ..." *Fla.Stat.* § 687.071(7) provides that "no extension of credit made in violation of any of the provisions of this section shall

be an enforceable debt in the courts of this state."

■ It is well settled under Florida law that both *Fla.Stat.* §§ 687.04 and 687.071 provide statutory causes of action which allow a borrower to seek affirmative relief against a lender who has made a usurious loan, as defined by the statutes. *See, e.g., Tel Service Co. v. General Capital Corp.*, 227 So.2d 667 (Fla.1969); *Financial Federal Savings & Loan Association v. Burleigh House, Inc.*, 305 So.2d 59 (Fla. 3d DCA 1974), *disapproved on other grounds, Catogas v. Southern Federal Savings & Loan*, 369 So.2d 922 (Fla.1979). In the case of civil usury in violation of *Fla.Stat.* § 687.03, the borrower's remedy is to seek forfeiture of twice the amount of interest actually paid by the borrower. *See Fla.Stat.* § 687.04; *Dezell v. King*, 91 So.2d 624 (Fla.1956). In the case of a loan which rises to the level of criminal usury under *Fla.Stat.* § 687.071, the entire loan obligation is unenforceable and the borrower is entitled to seek forfeiture from the lender of any and all principal and interest actually paid by the borrower to the lender under the usurious loan. *See Matter of Offshore Development Corp.*, 37 B.R. 96 (Bankr.M.D.Fla.1984), *aff'd, Beausejour Corp., N.V. v. Offshore Development Co., Inc.*, 802 F.2d 1319 (11th Cir.1986). A bankruptcy debtor may bring a turnover action premised on violations of Florida's usury laws to recover the statutorily prescribed penalties for principal and/or interest paid on a usurious loan. *See Id.*

■ In order to prevail on a usury claim under Florida law, a borrower must establish the following elements by clear and satisfactory evidence: (1) a loan, express or implied; (2) an understanding between the parties that the money lent shall be repaid; (3) that a greater rate of interest than is allowed by law was paid or agreed to be paid; and (4) the corrupt intent of the lender to exact more than the legal rate of interest. *Dixon v. Sharp*, 276 So.2d 817, 819 (Fla.1973); *Matter of Offshore Development Corp.*, 37 B.R. at 101; *Matter of Mickler*, 50 B.R. 818, 828 (Bankr. M.D.Fla.1985). Knowledge by the borrower that a loan is usurious, or even the fact the loan is made at the borrower's suggestion, does not prevent the borrower from invoking the protection of the usury laws. *See River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966); *Sun Bank of Tampa Bay v. Spigrin Properties*, 469 So.2d 240 (Fla. 2d DCA 1985). In determining whether a particular loan is usurious, the court must look beyond the terms of the documents themselves and consider the entire substance of the transaction. *See Matter of Offshore Development Corp.*, 37 B.R. at 101; *Antonelli v. Neumann*, 537 So.2d 1027, 1029 (Fla. 3d DCA 1988).

The parties do not dispute the existence of the first two elements of a usury in this case (i.e. that the transactions at issue were loans and that there was an understanding between the parties the loans were to be repaid). The only issues in dispute are whether Defendant was paid interest on the Notes at rates in excess of the maximum rates permitted by Florida law and whether Defendant had the requisite intent to charge or receive usurious interest.

### A. The Interest Rate Paid on the Notes

■ As discussed above, the evidence presented at trial clearly showed that Defendant received what could only logically be characterized as interest from Omni on the Notes at rates in excess of the statutory maximums set forth in *Fla.Stat.* §§ 687.04 and 687.071. The assumptions made by Holtz in calculating the interest received by Defendant were clearly supported by the uncontroverted evidence at trial. For example, it was logical for Holtz to assume that the $52,500 payment by Omni to Defendant on December 27, 1990 was a repayment of the $50,000 principal on Note 3 plus $2,500 in interest (60% annual interest rate) in light of the following evidence: (1) the payment to Defendant coincided with the maturity date on Note 3; (2) Omni's records reflect a payment to Defendant of $50,000 in *principal* and $2,500 in *interest* on that date; (3) Defendant admitted that the $52,500 payment paid off Note 3; and (4) Defendant testified

that Mullens told him he would be paid 5% ($2,500) for what eventually became Note 3.

Similarly, it was logical to assume that all the payments (both cash and check) to Defendant prior to the $52,500 payment on December 27, 1990, were attributable to interest on Note 1 and Note 2 in light of the fact that; (1) Notes 1 and 2 were the only Notes outstanding at the time of the payments; (2) Notes 1 and 2 were repeatedly rolled over at full face value without any reduction of principal; and (3) Omni's records regarding the Notes recorded the check payments to Defendant as "interest paid" on Notes 1 and 2.

Although Defendant offered no evidence to rebut Holtz's testimony and admits both the timing and amount of the payments made to him by Omni, he nonetheless attacks Holtz's apportionment of those payments between principal and interest on the various Notes. Defendant contends that he should be permitted to apportion the payments from Omni between principal and interest in a manner which would make the Notes non-usurious. Defendant seeks to have this Court attribute $390,000 of the $455,000 paid by Omni under the Notes to repayment of principal and to credit the remaining $65,000 to interest. Defendant relies on a general principal of debtor/creditor law that, where a debtor fails to direct application of a voluntary partial payment of a debt, the creditor may apply it as he sees fit. *See, e.g., McElwain Assoc. v. Culbreth*, 417 So.2d 838 (Fla. 1st DCA); *In re Securities Group*, 116 B.R. 839 (Bankr. M.D.Fla.1990).

Defendant's belated attempt to arbitrarily apportion payments between principal and interest in a manner which would make the Notes non-usurious must fail. The cases cited by Defendant do not involve claims for usury. Defendant's efforts to apportion payments between principal and interest, even if permissible in a usury case, are contrary to the evidence presented at trial. The testimony and exhibits relating to the circumstances surrounding the loan transactions support Holtz's apportionment of payments between principal

and interest as well as his interest calculations. Further, Defendant's admissions by the allegations of his affirmative defenses and counterclaim, are inconsistent with those allegations. In his affirmative defenses and counterclaim, Defendant alleged that, of the $390,000 lent to Omni, $140,000 in principal was still due and owing from Omni. Thus, Defendant took the position that the $455,000 in payment he had already received consisted of only $250,000 in principal repayment and $205,000 in interest. As recognized in *In re Securities Groups*, 116 B.R. 839 (Bankr.M.D.Fla. 1990), one of the cases relied on by Defendant, a "creditor's action to recover on remaining debts or items is evidence of the creditor's allocation of payments already received." Defendant simply cannot arbitrarily reapportion payments at this late stage in a manner contrary to both the evidence and his own allegations in order to avoid a finding of usury.

### B. *Defendant's Intent.*

Defendant next claims that, even if the interest he received under the Notes was usurious, Plaintiff failed to prove that Defendant had the requisite intent to charge or receive usurious interest. To prove the element of usurious intent, a borrower need not demonstrate that the lender had any specific intent to violate the usury statutes, but merely that the lender intended to charge or exact interest in excess of the statutorily proscribed rates. *See Antonelli*, 537 So.2d at 1029; *Matter of Mickler*, 50 B.R. at 827. Florida courts have long recognized that:

> To put the borrower to the task of proving, subjectively, the lender's culpable mental processes at the time the loan contract was entered would place an impossible burden upon the borrower and frustrate the purposes of the statute.

*River Hills, Inc. v. Edwards*, 190 So.2d 415, 424 (Fla. 2d DCA 1966). Accordingly, it is well settled under Florida law that the element of "corrupt intent" is proved by showing that the lender *knowingly charged* or *knowingly received* interest at a rate in excess of the maximum statutory

rate. *See Dixon v. Sharp,* 276 So.2d 817 (Fla.1973); *Atwood v. Fisher,* 330 So.2d 62 (Fla. 3d DCA 1976); *River Hills,* 190 So.2d at 424. As the court stated in *River Hills,* any "presumption of lawful purpose and proper intent on the part of the lender" dissolves once such a showing is made. *Id.* In determining whether the lender knowingly charged or received excessive interest, this Court must consider "all of the circumstances surrounding the transaction." *Rollins v. Odom,* 519 So.2d 652, 657 (Fla. 1st DCA 1988). A "lender's testimony that he did not have an intent to charge and to receive interest in excess of the legal rate is not determinative of the question." *Rollins,* 519 So.2d at 657.

Here, Defendant did not testify, and offered no proof as to his intent or knowledge. The evidence presented by Plaintiff clearly established that Defendant knew that he was receiving interest on the Notes which exceeded 25% per annum. Mullens testified that he told Defendant to expect a return of approximately 9% per quarter, which computes to 36% per year. The letters from Mullens to Defendant evidence quarterly payments to Defendant of approximately $9,000 per quarter which are often described as "dividends." Those letters also advise Defendant that he should expect a return in excess of the 6% rate set forth in the Notes and along the lines of what he had been previously receiving from Omni. Defendant himself testified that he understood that he would be receiving more than the 6% rate set forth in the Notes. Finally, Defendant's 1991 tax return acknowledges receipt of interest from Omni of $30,600, an amount which Holtz determined yielded excessive interest rates when applied to the Notes outstanding during that year.

The simplicity of the loan transactions and interest calculations in this case support the finding that Defendant knew that he was receiving usurious rates of interest. In 1990, for example, the evidence clearly established that Defendant received, by both cash and check, payments from Omni on Notes 1 and 2 totalling $58,500. These payments could only properly be characterized as interest, as the principal balances on Notes 1 and 2 were repeatedly rolled over for their full face value with no reduction of principal. Payment of $58,500 as interest on $200,000 of principal in slightly less than one year amounts to an interest rate in excess of 25% per annum. To allow Defendant to plead ignorance in the face of such obviously excessive interest would remove the teeth from Florida's usury laws and undermine their purpose. Accordingly, the Court finds that Defendant knew he was receiving interest on the Notes in excess of 25% per annum and that Plaintiff carried its burden on the element of intent.

## II. *Turnover: Accounts Receivable*

█ Plaintiff is entitled to recover matured debts owed to Omni in a turnover claim under § 542(b). Omni made $56,000 in payments to or for Defendant's benefit which were wholly unrelated to the payments made by Omni under the Notes. Although these payments were made to the Lavay Corporation, rather than directly to Defendant, they were issued in this manner pursuant to Defendant's instructions and for his benefit. Moreover, they are reflected in Omni's records as accounts receivable due to Omni from Defendant, not from the Lavay Corporation. The Defendant offered no evidence to refute his liability. Therefore, the Court finds that Plaintiff is entitled to recover this $56,000 in accounts receivable from Defendant pursuant to § 542(b).

## III. *Defendant's Set–Off Defense and Counterclaim*

█ In his Answer, Defendant asserted that he was entitled to offset from any recovery by Plaintiff the entire $140,000 principal balance, plus interest, allegedly due and owing on Note 4. Defendant also claimed these amounts in a counterclaim. Defendant has failed to file a timely proof of claim for the amount he seeks to offset from Plaintiff's judgment.

Defendant appears to have conceded his Counterclaim and set-off defense by offering no evidence to prove them at trial and by failing to address them in his Post–Trial

Memorandum filed in accordance with the Court's instructions. Moreover, Defendant has taken a position in his Post–Trial Memorandum which is wholly inconsistent with his Counterclaim and set-off defense by asking this Court to attribute the payments he received from Omni to a complete repayment of principal before crediting those payments to interest under the Notes. Regardless, because this Court finds that the Notes were usurious in violation of *Fla. Stat.* § 687.071, Defendant's set-off defense and counterclaim cannot be sustained. *Fla.Stat.* § 687.071(7) unequivocally provides that a criminally usurious loan is not an enforceable debt. Thus, Defendant cannot seek to recover the unpaid principal on a criminally usurious loan, whether by proof of claim, set-off, counterclaim or otherwise. To permit any kind of offset of a penalty imposed for a criminally usurious loan would contravene the plain language of the statute.

### CONCLUSION

Plaintiff is entitled to: judgment against Defendant on Count I of its Second Amended Complaint for the $455,000 in interest and principal paid to Defendant under the Notes; judgment against Defendant on Count II of its Second Amended Complaint for $56,000; and judgment against Defendant on Defendant's Counterclaim.