335 So.2d 598 (1976)
I.R.E. FINANCIAL CORPORATION, Appellant,
v.
Marwin S. CASSEL, As Trustee, Appellee.
No. 76-76.
District Court of Appeal of Florida, Third District.
May 18, 1976.
Rehearing Denied August 10, 1976.
*599 Pettigrew & Bailey, Miami, for appellant.
Cassel & Benjamin, Miami, for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
HAVERFIELD, Judge.
Defendant seeks reversal of an adverse summary final judgment awarding plaintiff twice the amount of interest charged in this usury action.
Plaintiff, Marwin S. Cassel, as trustee, filed this suit for usury and alleged that a certain purchase money mortgage note for $1,300,000 was in fact a loan of $286,000 resulting in a usurious transaction.
At the time I.R.E. Financial Corporation submitted the property in question to Marwin S. Cassel and the various persons who became beneficial owners of this trust, it did not own the property and was to have no part in the sale except as broker. The investors would not purchase the property unless the financing was structured in a way where the purchasers could assume a second lien in the principal amount of $1,300,000 which would permit them to prepay interest on this entire mortgage amount for tax shelter purposes. To accomplish this purpose, I.R.E. would take title to the property and simultaneously reconvey to Cassel, as trustee. Based on this understanding Cassel, as trustee, on December 20, 1974, purchased from defendant, I.R.E., the Bedford Gardens Apartments for $1,310,000. According to the terms of the sale, Cassel executed a purchase money mortgage in the amount of $1,300,000 which was inferior to an existing first mortgage in the amount of $1,035,000 and a second mortgage of $100,000. These prior liens remained the sole obligation of I.R.E. as they were not assumed by Cassel nor was the property purchased "subject to" them. Only in the event of a default in the payment of these prior liens by I.R.E. did Cassel have the right to make such payments due and the amounts of any funds expended in such payments would be considered a payment and credit on the Cassel purchase money mortgage note. At closing Cassel paid $10,000 down, closing costs of $123,500 (points prepaid at 9 1/2%), plus $110,000 representing the voluntary prepayment of interest for the first year (at 8 1/2%).
About a year later plaintiff brought this usury action alleging that the $1,300,000 mortgage was a loan in the amount of $268,000 (which constituted the difference between the purchase price, existing loans and the amount required to be paid by plaintiff on December 14, 1983) for which he paid $234,000 in interest. Defendant denied (1) the transaction was usurious, and (2) it intended to charge interest in excess of that permitted by law, and further contended that the agreement plaintiff alleges is usurious was structured by purchasers for their own tax benefits. Both parties filed motions for summary judgment. The trial judge entered final summary judgment finding the transaction to be usurious and awarding plaintiff $468,000 (twice the amount of interest exacted), plus costs and reasonable attorney's fees. We reverse.
Usury is largely a matter of intent and is not fully determined by the fact that the lender actually receives more than the law permits, but is determined by the *600 existence of a corrupt purpose in the lender's mind to get more than the legal interest for money lent. Further, one who alleges usury to avoid or defeat an obligation to pay money must establish his charge by clear and satisfactory evidence. See Dixon v. Sharp, Fla. 1973, 276 So.2d 817.
We conclude that under the circumstances there are genuine issues of material fact as to whether the actual payments of interest rendered in the transaction are usurious and, if so, whether the existence of the requisite corrupt intent on the part of the defendant to charge more than the legal rate of interest is present.
Accordingly, the summary final judgment is reversed and the cause remanded to the trial court for further proceedings.