McCORD, Acting Chief Judge.
This is an appeal from a final judgment following a jury verdict, the sole issue being whether or not a promissory note given by S. Perry Penland to Gulf Life Insurance Company was usurious. While considerable time has elapsed since oral argument of this case, it is a case in which we have a divided court, and it did not reach the writer of this opinion until June 23, 1976, for the preparation of a majority opinion. Gulf contends that the trial court erred in denying its motion for a directed verdict.
Penland applied to St. Johns River Bank for a loan of $225,000 which he needed to purchase a valuable coin collection which was located in Texas. Claude Spink, the bank’s president, advised Penland that the money was available, but it was clearly understood that the loan would not be made until the lender was satisfied with the coin collection as collateral and had it as security for the loan. Spink stated that he would have to go with Penland to Texas where he would have the collection appraised. Thereafter, if satisfied with the collateral, Penland would execute a promissory note for $225,000, plus interest thereon at 10%, all payable in three years. The bank had arranged for Gulf to make the loan, but this was unknown to Penland at the time.
Penland purchased airline tickets, and he and Spink flew to Texas. Gulf had deposited $225,000 in an account in Penland’s name at the bank, but this was unknown to him. The $225,000 was then transferred by telegram to an account in a Texas bank opened in the name of St. Johns River Bank. In Texas, Spink withdrew $140,000 in cash from the account. That amount was to be the purchase price for the collection. ($65,000 of the remaining $85,000 was to be a finder’s fee which was to be paid by Penland to one Jack Truitt upon completion of the transaction.)
After Spink withdrew the $140,000, Pen-land placed it in an overnight bag and they subsequently joined two individuals who were seated on the front seat of an automobile. The two individuals reportedly were nephews of two old people who owned the coin collection. Penland and Spink entered the automobile and sat on the back seat. One of the individuals asked to see the money and Spink held it up. The individual then pulled it over into the front seat and proceeded to count it into another bag that the individual had *295 with him. Upon completion of the counting, he snapped the bag shut, handed it to Penland on the back seat, and Penland placed the bag in his overnight bag. During the money counting on the front seat, the money had been switched to “play money,” but Penland and Spink did not learn of the switch until late that night. Following conferences with officials of Gulf and in consideration of Gulf’s fore-bearance to sue, Penland, on October 17, 1969, signed the three year note to Gulf Life in the principal sum of $225,000 with interest at 10%. The face of the note carried a notation as follows:
“Plus a FINANCE CHARGE (constituting) an ANNUAL PERCENTAGE RATE OF 10%) $67,500.00.”
$67,500 is interest for three years at 10% per annum on $225,000. The note was backdated to October 6, 1969, the date the money was transferred by the lender to the Texas bank for Penland’s convenience so that it would be available there for his purchase of the coin collection. It was on the day following this transfer that Pen-land received possession of $140,000 of the money and the flim-flam occurred. As to the amount and date of the note, the record shows from Penland’s testimony the following:
“The date is what came to my attention . . . so I asked about the date and he (Spink) or Mr. McCauley, both of then said no, that date had to be like it appeared on this note, as did the $225,000, which was the original amount of the asked for monies so that it would be in continuity . . . with their books and keeping with their books and records . . . that would be to keep the records straight.”
On October 21, 1969, (four days after the note was signed) upon retransfer of the $85,000 from the Texas bank to Gulf, Pen-land was credited with a payment on principal in that amount, which reduced the principal to $140,000.
To purchase the coin collection, it was necessary that Penland have the required $225,000 in cash in Texas, the place where the purchase was to be consummated. It is immaterial that he did not know that Gulf Life was furnishing the money for the loan through St. Johns River Bank. Pen-land obviously knew when he made the trip to Texas with Spink that the money would be available there. The entire $225,000 of the loan for which Penland had applied was transferred to him on the books of the lender and as above stated, was transferred by telegram to a Texas bank on October 6, 1969, for Penland’s use in making the purchase.
Other than the note recitation that it was for the principal amount of $225,000 at 10% interest and the above quoted notation thereon, there is no evidence whatsoever that Gulf ever claimed or sought interest in excess of 10% (the maximum legal rate) on any amount in excess of the $140,000. The evidence is clear that Gulf never intended to charge more than 10% interest per annum on $140,000. Penland, an attorney, upon advice of his attorney, executed the note knowing that it was backdated to the date the money was transferred by telegram to Texas for his use in purchasing the coin collection. Gulf billed Penland annually for the interest though it was not due until the maturity date of the note) and in each instance the amount billed was $14,000, which is 10% of $140,000. Gulf’s books and records and reports filed with the Insurance Department of the State of Florida (as well as with those of other states in which it operates) showed the principal amount of the loan to be $140,000 at 10% interest. This suit was filed by Gulf December 4, 1972, alleging an unpaid principal balance of $140,000 plus interest at the rate of 10% per annum since October 6, 1969. After numerous pleadings and arguments thereon and after a number of Penland’s defenses had been stricken, on December 10, 1973, over a year after the suit had been filed, Penland *296 filed an additional affirmative defense alleging usury.
The Supreme Court in Dixon v. Sharp, Fla., 276 So.2d 817 (1973), in discussing the four requisites of a usurious transaction, pointed out that there must exist a corrupt intent to take more than the legal rate for the use of the money loaned; that “[h]e who alleges usury to avoid or to defeat an obligation to pay money must establish his charge by clear and satisfactory evidence.” The record here not only fails to establish by clear and satisfactory evidence that Gulf had a corrupt intent to take more than the legal rate of interest for the $140,000, but it contains no evidence which supports such corrupt intent. Penland argues that the fact that the note was made for $225,000 rather than $140,000 supports such an intent. In this, Penland overlooks the circumstance that such was obviously done for accounting purposes; that he was given credit on principal for the $85,000 as soon as it was returned from the Texas bank a few days after the execution of the note and that Gulf has not claimed of him interest in excess of 10% on the $140,000. The trial court erred in not granting Gulf’s motion for a directed verdict.
It has occurred to us that usury may not be a defense to this note since the consideration for it was forebearance to sue and no usury appears upon the face of the note. That question has not been raised, and, we, therefore, give it no consideration.
REVERSED.
SMITH, SAMUEL, S., Associate Judge, concurs.
MILLS, J., dissents.