586 So.2d 385 (1991)
Sheldon POLAKOFF, Appellant,
v.
STATE of Florida, Appellee.
No. 90-661.
District Court of Appeal of Florida, Fifth District.
August 8, 1991.
Rehearing Denied September 3, 1991.
*387 Stuart I. Hyman of NeJame & Hyman, P.A., Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
COWART, Judge.
This case involves the inter-relationship of section 687.071(3), Florida Statutes, of the usury statute and section 895.03(3), Florida Statutes, of the Florida Racketeer Influenced and Corrupt Organization (RICO) Act; problems in pleading violations of those statutes; the scope of a search warrant and the scope of a search pursuant to a search warrant.

(1) FACTS (Stated most favorably to State):

(1)(a) About January, 1988, the defendant made a loan of $10,000 in money to Ozzie Williams that was usurious under section 687.071(3), Florida Statutes.
(1)(b) Williams made, and the defendant received, as interest on Williams' usurious loan, payment in March, April and May, 1988.
(2)(a) About March, 1988, the defendant made a loan of $13,000 (or $15,000 or $17,000) in money to Haya Bigloo that was usurious under section 687.071(3), Florida Statutes.
(2)(b) Bigloo made, and the defendant received, interest payments of $500 in each of the three months of April, May and June, 1988, on the $13,000 (or $15,000 or $17,000) usurious loan.
(3)(a) In May, 1988, the defendant made a second loan of $3,000 (or $3,500) in money to Bigloo that was usurious under section 687.071(3), Florida Statutes.
(3)(b) In about June, 1988, Bigloo made, and the defendant received, one payment of $1,250 on account of principal and interest on the $3,000 (or $3,500) usurious loan.
(3)(c) On August 5, 1988, the police provided Bigloo with $2,500 in cash and videotaped Bigloo paying, and the defendant receiving, the $2,500 as the principal and interest balance due on the Bigloo $3,000 (or $3,500) loan.
(4) About June or July, 1988, the defendant made a loan of $10,000 in money to Lelia Bryant that was usurious under section 687.071(3), Florida Statutes.
(5) About July, 1988 the defendant made a loan of $3,000 in money to Stanford Russell that was usurious under section 687.071(3), Florida Statutes.
When Bigloo mentioned her loans to a sales tax investigator, the police were contacted and they provided Bigloo with funds and videotaped the payment stated in paragraph (3)(c) above. The police obtained a warrant to search the defendant's place of business for "documents recording the extension of credit to Haya Bigloo... ."[1] In executing the search warrant, the law enforcement officers searched other files and *388 seized checks and documents relating to other persons, including Ozzie Williams and Lelia Bryant and that information led to evidence of the usury offenses involving those individuals as set forth in paragraphs (1) and (4) above.

(2) CHARGES:
Based on the facts set forth in the numbered paragraphs above, the State not only charged (in Counts 2, 4, 6, 8 and 9) the defendant with the basic five counts (each a third degree felony) of "loan sharking" (section 687.07(3)) based on the usurious loans set forth in paragraphs (1)(a), (2)(a), (3)(a), (4) and (5) but the State repackaged the facts into an additional five criminal charges being four (Counts 1, 3, 5 and 7) first degree felony charges under the Florida RICO Act, section 895.03(3), Florida Statutes, and (Count 10) one second degree felony charge of transporting a monetary instrument or funds with the intent to carry on a specific unlawful activity in violation of section 896.101(2)(b)1., Florida Statutes.

(3) CONVICTIONS:
The defendant was convicted only of Count 1 (Racketeering by engaging in a pattern of racketeering activity, section 895.03(3)); Count 4 "loan sharking" (section 687.071(3), Florida Statutes) (relating to the $13,000 (or $15,000 or $17,000) loan to Bigloo [paragraph (2)(a) above]); Count 5 Racketeering by collection of an unlawful debt (relating to the $500 interest payments received on the $13,000 (or $15,000 or $17,000) loan to Bigloo [paragraph (2)(b) above]) and the videotaped receipt on August 5, 1988 of the final ($2,500) payment on the $3,000 (or $3,500) Bigloo loan (paragraph (3)(c) above); and Count 8 "loan sharking" (section 687.071(3), Florida Statutes) (relating to the $10,000 loan to Lelia Bryant paragraph (4) above).

(4) ISSUES ON APPEAL:
The defendant raises twelve issues on appeal, several of which have multiple subissues but we find those considered below to be more than sufficient to dispose of this appeal.

(4)(a) AS TO COUNTS 4, 8 and 1

(4)(a)1.  FAILURE TO ALLEGE THE ELEMENT OF CORRUPT INTENT
Count 4 charges the defendant with the violation of the usury statute (section 687.071(3), Florida Statutes) as to the loan described in paragraph (2)(a) above. Count 8 charges the defendant with the violation of the usury statute (section 687.071(3), Florida Statutes) as to the loan described in paragraph (4) above. Count 1, in effect, charges the defendant with a violation of the RICO Act (section 895.03(3), Florida Statutes) by participating in an "enterprise" in a pattern of racketeering activity by engaging in two of five enumerated incidents of racketeering conduct, the five enumerated instances alleged being violations of the usury statute (section 687.071(3), Florida Statutes) as to the loans described in paragraphs (1)(a), (2)(a), (3)(a), (4) and (5) above. These are the same loans which were the basis for the five counts of "loan sharking" charged in Counts 2, 4, 6, 8 and 9.
The "loan sharking" allegations in Counts 4 and 8 and the five "loan sharking" allegations set forth as "incidents" or predicate crimes in the Count 1 Racketeering charge failed to include in the original sworn information allegations that the interest on the "extension of credit" (loans) described therein was "willfully and knowingly" charged, taken or received, as is a part of the definition of that crime contained in section 687.071(3), Florida Statutes. This omission was called to the trial court's attention by motion to dismiss Counts 4 and 8, which motion was denied. However, at some later time, perhaps at trial, the omitted words were interlined in handwriting into the allegations in Counts 4 and 8 and into the allegations of the five predicate crimes in Count 1.
Unlike most crimes which require only a general intent to do the act prohibited by criminal law, and also unlike the fewer crimes that require a specific intent on the part of the defendant at the time of the doing of the prohibited act,[2] the crime *389 of usury peculiarly requires the existence of a "corrupt intent" to charge, take or receive more than the legal rate for the use of money loaned[3] and the allegation of that particular mens rea is embodied in the statutory words "willfully and knowingly" which are therefore essential elements of the definition of the statutory offense of usury that must be alleged in the charging document in order to adequately define and charge the crime and to meet the constitutional mandate that the accused be informed of the nature and cause of the accusation against him.

(4)(a)2. INEFFECTIVE AMENDMENT OF INFORMATION
The original amended information was sworn to by the State Attorney. There is some indication that the handwritten interlineation adding the essential but omitted words "willfully and knowingly" to the information were written either by the trial judge or the acting assistant state attorney. In either event the addition of those essential allegations by instanter amendment to the information after it was sworn to and filed does not conform to Article I, Section 15(a), Florida Constitution, which requires an information under oath filed by the prosecuting officer of the court.
As to Counts 1, 4 and 8, the information was fatally defective as originally sworn to and filed. The amendment adding the essential allegations was not under oath and was ineffective and the convictions based on those counts are invalid and are reversed.

(4)(b) AS TO COUNT 5
Generally criminal acts, prohibited by the Florida RICO Act (Chapter 895, Florida Statutes), require "racketeering activity" (or predicate crimes),[4] an "enterprise"[5] and a "pattern of racketeering activity."[6] However, section 895.03(3), Florida Statutes, in essence makes it unlawful for any person to conduct or participate in an "enterprise through a pattern of racketeering activity or [emphasis added] the collection of an unlawful debt." The definition of "unlawful debt" in section 895.02(2) refers to many statutes making certain debts legally unenforceable in this state because contracted in violation of statutes prohibiting gambling or Chapter 687, Florida Statutes, relating to interest and usury.
In summary, the usury statutes (sections 687.071(2) and (3), Florida Statutes), make it a crime to willfully and knowingly "charge, take or receive" interest *390 in excess of a specified rate. The RICO Act (section 895.03(3)) makes it illegal for a person to participate through an enterprise in a pattern of racketeering activity which includes the crime of usury under Chapter 687. Section 895.03(3) of the RICO Act also makes it a crime for a person to participate through any enterprise to collect certain unlawful debts which include a debt contracted in violation of the usury statute. As to the two Haya Bigloo loans and the payments thereon as set forth in paragraphs (2)(a), (2)(b), (3)(a), (3)(b) and (3)(c) above, the defendant was charged in Count 4 with usury, in Count 1 with racketeering activity and in Count 5 with collection of an unlawful debt. However, Count 5 charges and defines "an unlawful debt" only by reference to that term as defined in section 895.02(2) of the RICO Act, which statute, set forth below[7] describes that term only by reference to numerous state statutes relating to dogracing, horseracing, jai alai, usury and gambling and other general references to state and federal law. Count 5 does not directly refer to the Florida usury chapter either generally or by reference to any specific usury statute and utterly fails to refer to any particular unlawful debt and fails to allege any ultimate facts relating to the elements of any usurious interest offense (to willfully and knowingly charge, take or receive interest at a rate exceeding a specified statutory rate) as we hold above to be essential to the allegations of the crime of usury itself. A defendant is entitled to a much more specific allegation of the essential elements of the predicate "illegal debt" than a mere reference to a statute which itself refers generally to many other statutes relating to many types of illegal gambling and usurious debts.
Sections 687.02 and 687.03 define contracts for interest in excess of 18% per annum to be usurious and make it unlawful to reserve, charge or take such interest. Section 687.071(2) makes it a second degree misdemeanor to willfully and knowingly charge, take or receive interest in excess of 25% per annum. Section 687.071(3) makes it a third degree felony to willfully and knowingly charge, take or receive interest in excess of 45% per annum.
The reference in section 895.02(2)(a)3., of the RICO Act defining "unlawful debt" as a legally unenforceable debt incurred or contracted in violation of Chapter 687 appears to relate, not only to the criminal usury provisions of 687.071(2) and (3) (see § 687.071(7), Fla. Stat.) but also to the civil penalty in section 687.04 which provides, in effect, that interest charged in willful violation of section 687.03 (interest in excess of 18% per annum) is forfeited and that a contract for such interest is a legally unenforceable debt. For a discussion of the differences between civil and criminal usury, see, generally, Rollins v. Odom, 519 So.2d 652 (Fla. 1st DCA 1988), rev. denied, 529 So.2d 695 (Fla. 1988).
Section 895.03(3), the basis for Count 5, makes it a first degree felony for a person employed by, or associated with, any enterprise to collect an unlawful debt and the definition of an "unlawful debt" under section 895.02(2)(a)3. includes a debt for interest legally unenforceable under section 687.04 because it is in excess of 18% provided in section 687.03; whereas "receiving" usurious interest exceeding 25% but not 45% is but a second degree misdemeanor under section 687.071(2). Section 895.03(3) requires that the defendant be employed by, or associated with, an enterprise when collecting the unlawful debt but *391 this element does not make an adequate substantive distinction between a criminal "collection" of illegal debt under section 895.03(3) and a criminal "receiving" of usurious interest under section 687.071(2) and (3) because a defendant so employed or associated with an enterprise receiving usurious interest would also be guilty of a violation of section 687.071(2) or (3). The only possible substantive difference between those statutes in the facts of this case is the difference between the act or conduct of "receiving" as prohibited by the usury statute and the act or conduct of "collecting" as prohibited by the RICO Act. Neither statute defines these crucial words. The word "collect" is commonly used to imply that the "receiving" by the collector is the result of some effort or efforts of the collector; however, the dictionary makes little meaningful distinction between the words, defining "collection" as the act or process of collecting and defining the word "collect" to mean to receive payment (as collecting on his insurance).[8] In any event, in the context of serious felony statutes, the lack of a meaningful definitional difference between the crime of "receiving" usurious interest under the criminal usury statute (section 687.071(2) and (3)) and the crime of "collection" of usurious interest (an unlawful or unenforceable debt under the RICO Act (section 895.03(3)) leads to the conclusion that by the enactment of section 895.03(3) relating to the collection of an unlawful debt, the legislature did not intend to create a distinct and new substantive crime punishable separate, apart and in addition to, the punishment for the preexisting crime of "receiving" usurious interest in violation of the usury statutes sections 687.071(2) and (3). There does not appear to be a reasoned, logical, coordinated relationship between the scope of criminal RICO charges involving violations of Chapter 687 and criminal usury charges under section 687.071(2) and (3); however, we do not believe the legislature intended to duplicate offenses which have essentially the same substantive elements. See section 775.021(4)(b)1., Florida Statutes. Even if so, the act or conduct involved in "receiving" usurious interest in violation of the criminal usury statute is so substantively the same as the conduct involved in the "collection" of a usurious interest in violation of the RICO Act, that when one is put in jeopardy as to conviction under one statute, he could not also be put in jeopardy of a conviction under the other.[9]
Nor are other possible distinctions between the two crimes meaningful in the context of the facts in this case.[10] Our *392 holding in this case does not mean the RICO Act offense involving collection of an unlawful debt is without application.[11]

(5) SCOPE OF SEARCH WARRANT AND SEARCH
The defendant moved to suppress evidence seized pursuant to the search warrant on the grounds that the affidavit supporting the warrant was defective; the warrant failed to describe the items to be seized with the required particularity and that the search and seizure exceeded the scope of the warrant. We do not consider the question as to the sufficiency of the affidavit[12] but do agree with the defendant and hold that the search warrant authorizing the search for, and seizure of, "documents recording the extension of credit to Haya Bigloo" did not meet the requirement of Article I, section 12, Florida Constitution, that the search warrant "particularly" describe the thing or things to be seized. The documents, if any, as might constitute evidence of the charging, taking or receiving of usurious interest as to the two Bigloo loans, in violation of section 687.071(3), Florida Statutes, should have been so "particularly" and specifically described as to have permitted any document, found and examined by an officer executing the search warrant, to have been readily recognized as being, or not being, a document described in the warrant. Nothing should be left to the discretion of the officers executing the warrant as to what should be seized and taken. Marron v. U.S., 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231, 236 (1927); see also, Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927). Warrants attempting to authorize a search for, and seizure of, a class or group of objects, such as "documents" are too general and do not describe the thing or things to be seized with the particularity that the constitution requires. If the original source of information upon which the search warrant affidavit relies cannot describe existing objects or things other than in terms of generic reference such as "papers", "documents", the information is too vague and indefinite upon which to authorize a search. General searches are not permitted. Not only did *393 the search warrant in this case fail to describe the documents to be seized with the required particularity but the officers executing the warrant seized many files and documents not relating to Haya Bigloo and those documents related to some loans at legal interest and also the loans to, and interest payments from, Ozzie Williams and Lelia Bryant described in paragraphs (1)(a); (1)(b); and (4) above and to the testimony of those persons.
The documents involving loans to and interest payments from Ozzie Williams and Lelia Bryant were not contraband on their face[13] and their illegal character could be determined only by making calculations and only from other facts such as the testimony of those parties.[14] All such documents were illegally seized and should have been suppressed[15] and all evidence including testimony to which the documents led was tainted as being the result of an unlawful search and therefore the fruit of a poisonous tree and should likewise have been suppressed.[16]
The police acquired knowledge of the Bigloo loans and payments directly from a lawful contact with Bigloo but in this case the joinder of the charges involving Bigloo in the same information with the tainted charges involving Williams and Bryant certainly served to prejudice the defendant and resulted in an unfair as well as an illegal trial not only as to the RICO charges in Counts 1, 2, 3, and 8, which included direct allegations relating to the Williams and Bryant loans but also to the counts (Counts 4, 5, 6, 7 and 10) that related only to the Bigloo loans. Joinder of offenses is a special problem in RICO cases.[17]

SUMMARY
In summary we hold (1) the search warrant did not sufficiently describe the thing or things to be seized with the particularity required by the constitution; (2) the officers executing the search warrant exceeded the scope of the warrant relating to loans to persons other than Haya Bigloo; (3) Counts 4, 8 and 1 were fatally defective in not alleging that the defendant "willfully and knowingly" charged, took, or received interest at a forbidden rate; (4) the unsworn amendment by interlineations of the filed information were ineffective; (5) the RICO charge in Count 5 of the collection of an unlawful debt failed to allege ultimate facts to adequately describe the debt and establish the unlawful nature of the debt.
We further hold that to the extent that sections 895.03(3) and 895.02(2) involve the collection of a debt unlawful because of a violation of the usury statute, the legislature did not intend or attempt to create a separate substantive crime duplicative of the felony charge of receiving a usurious rate of interest under section 687.071(3), Florida Statutes.
The defendant's convictions are reversed.
REVERSED.
GRIFFIN, J., and J. ANTOON, II, Associate Judge, concur.
NOTES
[1] The only loan documents suggested in the affidavit upon which the search warrant was based would appear to be loan proceeds checks for $15,000 and $3,500 and some "document" signed by Bigloo.
[2] Some such crimes requiring a specific intent are: attempts, with intent to commit other crimes (section 777.04(1), Florida Statutes); killings, with a premeditated design to effect the death (section 782.04(1)(a)1., Florida Statutes); assaults with a specific prohibited intent (section 784.021(1)(b), Florida Statutes); kidnapping with a specific prohibited intent (section 787.01(1)(a), Florida Statutes); burglary (section 810.02(1), Florida Statutes); obtaining or using property with a specific prohibited intent (sections 812.014(1); 817.02; 817.03; and 817.034(3)(d), Florida Statutes).
[3] See Dixon v. Sharp, 276 So.2d 817 (Fla. 1973); Clark v. Grey, 101 Fla. 1058, 132 So. 832 (1931). See also North American Mortg. Inv. v. Cape San Blas Joint Venture, 378 So.2d 287 (Fla. 1979); Moviematic Industries Corp. v. Metropolitan Mortg. Co., 560 So.2d 1220 (Fla. 3d DCA 1990); Antonelli v. Neumann, 537 So.2d 1027 (Fla. 3d DCA 1988); Rollins v. Odom, 519 So.2d 652 (Fla. 1st DCA 1988), rev. denied, 529 So.2d 695 (Fla. 1988); Gergora v. Goldstein Professional Ass'n. Defined Benefits Pension Plan and Trust, 500 So.2d 695 (Fla. 3d DCA 1987); Rebman v. Flagship First Nat. Bank of Highlands County, 472 So.2d 1360 (Fla. 2d DCA 1985); Argento v. Reynolds, 452 So.2d 135 (Fla. 2d DCA 1984); Gulf Life Ins. Co. v. Penland, 335 So.2d 293 (Fla. 1st DCA 1976), cert. denied, 355 So.2d 516 (Fla. 1978); I.R.E. Financial Corp. v. Cassel, 335 So.2d 598 (Fla. 3d DCA 1976); Sumner v. Investment Mortg. Co. of Florida, 332 So.2d 103 (Fla. 1st DCA 1976), cert. denied, 344 So.2d 327 (Fla. 1977).
[4] "Racketeering activity" is defined in section 895.02(1), Florida Statutes.
[5] "Enterprise" is defined in section 895.02(3), Florida Statutes. See, Boyd v. State, 578 So.2d 718 (Fla. 3d DCA 1991), rev. denied, 581 So.2d 1310 (Fla. 1991).
[6] "Pattern of racketeering activity" is defined in section 895.02(4), Florida Statutes, and "racketeering activity" is defined in section 895.02(1), Florida Statutes, and generally means the commission of certain crimes charged under certain statutes including Chapter 687, relating to interest and usurious practices, (see, section 895.02(1)(a)10.).
[7] Section 895.02(2) provides:

(2) "Unlawful debt" means any money or other thing of value constituting principal or interest of a debt that is legally unenforceable in this state in whole or in part because the debt was incurred or contracted:
(a) In violation of any one of the following provisions of law:
1. Section 550.24, s. 550.35, or s. 550.36, relating to dogracing, horseracing, and jai alai frontons.
2. Section 551.09, relating to jai alai frontons.
3. Chapter 687, relating to interest and usury.
4. Section 849.09, s. 849.14, s. 849.15, s. 849.23, s. 849.24, or s. 849.25, relating to gambling.
(b) In gambling activity in violation of federal law or in the business of lending money at a rate usurious under state or federal law.
[8] Webster's New Collegiate Dictionary, 218 (1979).
[9] Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).
[10] The usury statute describes one who shall "charge, take or receive" while the RICO Act involves "collection" which we hold to be the substantive equivalent of the word "receive." The words in the phrase "charge, take or receive" are in the disjunctive. The acts of charging or receiving can rather easily be substantively differentiated, taking or receiving cannot be easily contrasted and differentiated because they are synonymous describing concepts which are in effect synonymous. Nevertheless, these words together constitute a single element of the criminal usury crime and, as to a single factual event, when a person is charged with violation of the statute he can be convicted based on evidence of any one of the alternative acts in the absence of unusual restrictive specificity in the charging document, or in a bill of particulars (Florida Rule of Criminal Procedure 3.140(n)) sufficient to so identify the charged act as to not put him in jeopardy of conviction in that case based on proof of some other act included in the alternative element of the offense. To do this, if at all possible, requires that the allegations of one of the alternative acts not be so vague, indistinct and indefinite as to expose that defendant after conviction or acquittal to substantial danger of a new prosecution for what is constitutionally and substantively "the same offense", see Florida Rule of Criminal Procedure 3.140(o). In this case the consideration of such fine pleading practice is moot because the usury charge in Count 4 alleges all three alternatives ("charge, take or receive") thus clearly putting the defendant in jeopardy as to each of the three alternative acts.

Neither are the charging documents sufficient to differentiate the usury charge in Count 4 from the RICO charge in Count 5 on the basis of time because the usury charge in Count 4 facially alleges the prohibited conduct as occurring between March 1 and March 30, 1988 and the RICO charge in Count 5 alleges the prohibited conduct as occurring between March 1 and August 5, 1988. These time periods not only overlap but because time is not of the essence in most crimes, that is, the acts charged would be criminal regardless of when committed, the State is not limited at trial to prove that the offense charged was committed on the specific date or dates alleged and the State is normally entitled to offer proof of the charged act as occurring at anytime within the statute of limitations as to the particular criminal offense in the absence of a statement of particulars making exactness in the time of the alleged occurrence of the crime "of the essence" and vital to the State's case. Such a statement of particulars restricting the State's proof to time limits within a particular case serves to limit the defendant's jeopardy of conviction in the immediate case to the time periods alleged. It also serves to an equal extent to enlarge the scope of the defendant's exposure in a new prosecution for the same statutory offense as to an occurrence outside rthe time limited in the prior case, see, e.g., State v. Beamon, 298 So.2d 376 (Fla. 1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).
[11] Not only does the RICO collection of unlawful debt offense have applications as to unlawful gambling debts (see note 7), but it may have application to criminalize certain conduct not criminal under Chapter 687, the usury statute. Under Chapter 687 interest of 18% or less is lawful and the debt relating to both the interest and underlying principal is enforceable. When interest over 18% but under 25% per annum is charged, the debt for the interest is legally unenforceable and possibly constitutes an "unlawful debt" under section 895.02(2), Florida Statutes, and its collection a prohibited criminal activity under the RICO Act section 895.03(3), Florida Statutes, although the principal loaned is a lawful and enforceable debt. Interest charges over 25% but less than 45% are a second degree misdemeanor under section 687.071(2) and the underlying loan principal, while not criminalized by the usury statute, is made legally unenforceable by section 687.071(7), and possibly constitutes an "unlawful debt" under section 895.02(2) the collection of which is a crime under section 895.03(3). Charging, taking or receiving interest over 45% per annum is a third degree felony under section 687.071(3) and the underlying loan principal is also a legally unenforceable under section 687.071(7) and possibly an "unlawful debt" under section 895.02(2) the collection of which is a crime under RICO section 895.03(3).
[12] Even if the supporting affidavit was sufficiently detailed, it would not cure the defective search warrant unless it was physically attached to the warrant so as to constitute one document. State v. Nelson, 542 So.2d 1043 (Fla. 5th DCA 1989); Bloom v. State, 283 So.2d 134 (Fla. 4th DCA 1973); see also Booze v. State, 291 So.2d 262 (Fla. 2d DCA 1974), cert. denied, 297 So.2d 836 (Fla. 1974).
[13] See, Joyner v. City of Lakeland, 90 So.2d 118 (Fla. 1956); Carlton v. State, 418 So.2d 449 (Fla. 5th DCA 1982), approved, 449 So.2d 250 (Fla. 1984); Ludwig v. State, 215 So.2d 898 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 536 (Fla. 1969) and cert. denied, 396 U.S. 927, 90 S.Ct. 261, 24 L.Ed.2d 225 (1969); Hall v. State, 219 So.2d 757 (Fla. 3d DCA 1969).
[14] Many, perhaps most, usurious loans, including those in this case, are evidenced by documents which facially appear to charge a lawful rate of interest  the unlawful interest is exacted by not delivering to the borrower the full amount of the principal to be required to be "repaid."
[15] Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
[16] Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Caplan v. State, 531 So.2d 88 (Fla. 1988); cert. denied, 489 U.S. 1099, 109 S.Ct. 1577, 103 L.Ed.2d 942 (1989); D'Agostino v. State, 310 So.2d 12 (Fla. 1975).
[17] See Boyd v. State, 578 So.2d 718 (Fla. 3d DCA 1991), rev. denied, 581 So.2d 1310 (Fla. 1991).