WHATLEY, Judge.
Kenneth Ingraham appeals his convictions of arson and burglary. We reverse because the search warrant for his apartment did not comport with the constitutional requirement that the items to be seized be set forth with particularity. U.S. Const, amend. IY; Art. I, § 12, Fla. Const. See also §§ 933.04, .05, Fla. Stat. (1999).
At approximately 5:43 a.m. on June 3, 1999, Tampa Fire Rescue received a call regarding a fire at the Palma Ceia Little League building, which was used for storage as well as housing a concession stand. City of Tampa police officer Troy Neal responded to the fire. He observed one civilian at the scene, and this man turned out to be Ingraham. Not long after Neal first observed Ingraham, Ingraham approached him and commented that it was a big fire. Ingraham pointed to some bleachers and said that he had been sitting there. Neal asked him if he had seen anyone who might have started the fire, and Ingraham responded that he had not. *772 Neal asked Ingraham why he was there, and Ingraham stated that he had been out riding his bike on Bayshore Boulevard when he saw fire trucks and police cruisers with their sirens and lights on. He decided to follow them out of curiosity. It was later determined, however, that none of the fire or police vehicles that responded to the scene came down Bayshore Boulevard. Neal asked Ingraham for identification, and Ingraham produced a Florida identification card. A check of Ingraham’s criminal history revealed burglaries, vandalizing of vending machines, and arsons.
Fire investigators determined that the fire had been intentionally set with a combustible liquid and that the point of entry was through a second floor window where part of a chain link fence protecting the window was missing. Investigators also discovered that a vending machine had been pried open. A black duffel bag was found under some dead palm fronds in a vegetated part of the baseball field and another bag as well as some baseball gloves were found under the scorekeeper’s box behind home plate. The Little League president and some board members identified items in the duffel bag as items that were missing from the building. There were three well-preserved footprints in relative proximity to the duffel bag under the palm fronds, and plaster casts of them were taken.
The day after the fire, Officer Kurt Middleton contacted Officer Neal to advise him that he had encountered a man at the Palma Ceia Little League field at approximately 1:00 or 1:30 a.m. the morning of the fire. Middleton is a K-9 officer who takes his dog to that field for breaks. The man approached Middleton and commented that he had a good-looking dog. The man had something in his hand, and Middleton asked him to drop it. When the man dropped the item, which looked to be about two and a half to three feet long, it made a thud. Middleton thought it sounded like a heavy metal object. Middleton shined a flashlight on the man and saw that he was wearing dark clothing and fingerless gloves. Middleton was not able to converse with the man for very long because he received a call to which he had to respond. Middleton identified Ingraham from a photograph as the man he had encountered.
Officer A1 Alcala prepared the search warrant for Ingraham’s apartment, as well as the supporting affidavit. The warrant and the affidavit were reviewed by an assistant state attorney and then taken to a judge, who signed the warrant authorizing a search for “certain evidence relating to Arson and Burglary, to wit: Clothing, shoes, and other physical evidence relating to the Crime [sic] of Arson and Burglary.” During the execution of the search warrant, officers seized a drill, a drill bit, an American flag, rolled coins and money wrappers, bolt cutters, a pry tool, black fingerless gloves, a red tool box, a batting glove, and a yellow legal pad with writing on it. As the search was concluding, Ingraham arrived at his apartment. The officers placed him under arrest and then asked for his consent to search, which he provided.[1]
Prior to trial, Ingraham filed a motion to suppress the items seized from his apartment. The motion argued in part that the search warrant was insufficient on its face because section 933.05, Florida Statutes (1999), requires that a search warrant must describe the items to be seized with particularity and none of the items seized were described in the war *773 rant. The trial court denied the motion. Ingraham objected to the admission of the seized items at trial. We agree with his argument in this appeal that the trial court erred in denying the motion to suppress because the search warrant failed to describe the items to be seized with particularity. In fact, the warrant very nearly authorized a general search of Ingraham’s apartment. “General searches have long been deemed to violate fundamental rights.” Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In Marrón, the United States Supreme Court explained why the prohibition against general searches was so important as to be placed in the Constitution:
The practice had obtained in the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods, which James Otis announced “the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book;” since they placed “the liberty of every man in the hands of every petty officer.”
Id. (quoting Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).
“The particularity requirement makes general searches impossible and limits the executing officer’s discretion when performing a search.” Green v. State, 688 So.2d 301, 306 (Fla.1996) (holding that search warrant authorizing search for clothing defendant was wearing on particular evening was facially overbroad because it contained nothing to assist police in narrowing their search). See also Polakoff v. State, 586 So.2d 385 (Fla. 5th DCA 1991). The search warrant in the present case, like the one in Green, was facially overbroad despite law enforcement’s knowledge of the specific items for which they were looking. At the motion to suppress hearing, the prosecutor asked Officer Alcala what the officers were looking for ,and how they happened to seize the particular items they took from Ingraham’s apartment during the search. Alcala testified that they looked for clothing and shoes that smelled of smoke or an ignitable liquid and also for shoes that would probably match the plaster casts taken of the footprints in the baseball field. He stated that they seized a drill set and an American flag that the Little League president had told them was missing from the building, and they seized the bolt cutters because of the chain link fence that had been cut to gain access to the building. Thus, law enforcement officers were well aware of what items they were searching for, as evidenced by the items they seized. The search warrant, however, did not include corresponding descriptions of the items to be seized,[2] which would have reined in the searching officers’ discretion. See Green, 688 So.2d 301.
The fact that the officers may have known that they were looking for items of a particular character does not cure a search warrant that is overly broad. “[I]t is not relevant to this analysis [of whether a search warrant meets the particularity requirement] that the officer who actually executed the warrant had information not contained in the warrant. As we found in Carlton, the language of the warrant should not be scrutinized or compared to the knowledge of the officer seeking the warrant.” Green, 688 So.2d at 306 (citing Carlton v. State, 449 So.2d 250 (Fla.1984)).
The State makes two other arguments in support of the admissibility of the evi *774 dence seized from Ingraham’s apartment, but those arguments fail under the circumstances of this case. First, the good faith exception established in United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was specifically held by the Supreme Court not to apply where “a warrant may be so facially deficient— i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid.” (Emphasis supplied).
Second, the inevitable discovery doctrine does not apply because Ingraham’s consent to search was given after he was arrested, which was after the officers found the incriminating evidence in his apartment. “[W]hen consent is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search.” Connor v. State, 803 So.2d 598 (Fla.2001).
Accordingly, we hold that the trial court erred in denying Ingraham’s motion to suppress because the search warrant was facially overbroad and that all items seized pursuant to the warrant must be suppressed.[3] We reverse Ingraham’s convictions and remand for proceedings consistent with this opinion.
NORTHCUTT and SILBERMAN, JJ., Concur.

. When asked why the officers asked for Ingraham’s consent at that point, Officer Al-cala stated that they wanted his consent in case they needed to search his apartment again.

. The supporting affidavit does not cure the deficiency in the search warrant because the items it listed as objects of the search were described with no more particularity than they were in the search warrant. See State v. Nelson, 542 So.2d 1043 (Fla. 5th DCA 1989).

. The State's argument that the drill set and the flag are admissible because they were discovered in plain view during the search is without merit because the plain view doctrine only applies when law enforcement is lawfully on the premises searched. Britt v. State, 673 So.2d 934 (Fla. 1st DCA 1996).